Coy Wayne WELLS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–96–284–CR.

Court of Appeals of Texas,
Eastland.

April 16, 1998.

James W. Volberding, Bayham & Volberding, Tyler, for Appellant.

Marcus D. Taylor, Criminal District Attorney, Quitman, for Appellee.

Before DICKENSON and WRIGHT, JJ., and McCLOUD, Senior Judge.*

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting

## OPINION

DICKENSON, Justice.

The jury convicted Coy Wayne Wells of possessing "with intent to deliver" more than one gram of methamphetamine and assessed his punishment at confinement for a term of 15 years. He appeals. We affirm the conviction.

### Background Facts

Deputy Sheriff Kyle Henson testified that he was on duty during the early morning hours of July 14, 1995. Deputy Henson saw a pickup on a farm-to-market road at about 2:00 a.m. Deputy Henson testified that plain white lights were shining where the taillights should have been showing red lights. Deputy Henson planned to stop the vehicle, check the driver's identification, and give him a verbal warning about the defective lights. When the vehicle stopped, Deputy Henson recognized the passenger; there was an outstanding warrant for her arrest, and Deputy Henson arrested her and put her into his patrol car. Deputy Henson called his dispatcher and confirmed that appellant's license was valid and that there were no outstanding warrants for his arrest; however, appellant did not have proof of financial responsibility insurance, and the registration on the pickup was not current. Appellant was arrested for those violations. Deputy Henson put handcuffs on appellant and put him in the back of the patrol car with the passenger.

Another police officer arrived while Deputy Henson was putting appellant into the patrol car, and the two officers "began an inventory of the vehicle prior to releasing of the vehicle to the wrecker company for impounding." Deputy Henson said that they found a box of .38 caliber ammunition and a .22 caliber rifle in the cab of the pickup. They also found a purple felt Crown Royal bag under the seat which contained three insulin syringes (two new and one used), a bent metal spoon, and a set of "gram scales." They also found a cartridge box which contained "little zip-lock bags" and cotton swabs. They also found a .38 caliber Smith & Wes-

by assignment.

son revolver and a duffle bag which contained men's clothing, a large number of zip-lock bags in two sizes, and a cutting agent which is used by drug dealers to increase the volume of their drugs in order to make higher profits.

The drug paraphernalia which was found in the pickup was used by the State as circumstantial evidence to prove appellant's possession with "intent to deliver" the methamphetamine which was found in the patrol car close to where he had been placed before the officer took appellant and his passenger to jail.

### Points of Error

Appellant presents thirteen points of error. First, he argues that the evidence is both legally and factually insufficient to support his conviction. Next, he argues in Points 2 and 3 that the trial court erred in denying jury instructions that the jury should not consider evidence obtained by "illegal search and seizure" or if the jury found that the officers "lacked probable cause" to arrest appellant at the time the evidence was found.

Appellant argues in his next eight points of error that the trial court erred in denying his motion to suppress evidence. Points 4 through 7 are based upon TEX. CONST. art. I, § 9. Points 8 through 11 are based upon U.S. CONST. amends. IV and XIV. Points 4 and 8 refer to the warrantless search of the Crown Royal bag; Points 5 and 9 refer to the warrantless search of the duffle bag; Points 6 and 10 refer to the warrantless search of the cartridge box; and Points 7 and 11 refer to the warrantless search of the pickup which appellant had been driving. In his last two points of error, appellant argues that the State failed to prove an "inventory search" of appellant's pickup and that the trial court should have granted a hearing outside the presence of the jury on his motion to suppress evidence. All points of error have been considered.

### Sufficiency of Evidence

The evidence is legally sufficient under the tests stated in *Jackson v. Virginia,*

443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991). The evidence is factually sufficient under the tests stated in *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Cr.App.1996). More than one gram of methamphetamine was found in the patrol car in the area where appellant had been, and the officer testified that he had inspected the car before placing appellant in the car and that the amphetamine was not in the car at that time. The drug paraphernalia (the dilutants, the large number of small plastic bags, and the "gram scales") which were found in the pickup appellant was driving just before his arrest is circumstantial evidence that he possessed the drug "with intent to deliver," and the jury's verdict is not against the great weight and preponderance of the evidence. See *Clewis v. State*, supra. Point of Error No. 1 is overruled.

### *Jury Instruction*

■ No jury instructions were required. The facts were not disputed. The only testimony relating to the warrantless search came from the deputy sheriff and the passenger. The deputy's testimony supports the trial court's ruling that the evidence was admissible. The passenger's testimony on direct examination reads in pertinent part as shown:

Q: 'Can you tell me your name for the record?

A: Jeri Hancock.

Q: Jeri, where do you live right now?

A: TDC, SAFP.

Q: What does SAFP stand for?

A: Substance Abuse Felony Punishment Facility.

Q: Were you in a truck with Coy when he was stopped by the local police?

A: Yes, I was.

Q: Did you see flashing lights come on behind you?

A: Yes.

Q: And how quickly after Coy stopped the vehicle were you placed under arrest?

A: Immediately. The officer walked up to the truck and called my name. And when I got out of the truck he put me up against the car (sic) and handcuffed me, my hands behind my back.

Q: Okay. Did he tell you why you were under arrest?

A: He told me I had a hot check charge, and that's what he was arresting me for.

Q: Did you have any narcotics on you?

A: Yes, I did. [She left them in the back of the police car where she was sitting. The police found them where she was sitting, and they found other drugs where appellant had been sitting in the police car.]

Q: Did you see Coy handle any narcotics?

A: No.

Q: Did he know the narcotics [which she had in her bra] were on you?

A: No.

Q: What was the basis for the officer's arrest of Coy?

A: When they were putting Coy in the back of the police car they said they were arresting him because the taillight was out on the pickup.

On cross-examination, this witness testified that she "was high" and that she "was on drugs" at the time she was arrested. She also testified that she stayed on the passenger's side and that Coy stayed on the other side of the patrol car (where more than one gram of methamphetamine was found).

TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon Pamph. Supp.1998) requires a jury instruction if the "evidence raises an issue" as to whether any evidence was obtained in violation of any provisions of the Constitution or laws of the State of Texas or of the United States. The evidence does not "raise an issue" as to any violation of state or federal law. See, e.g., *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Cr.App.1986). Points of Error Nos. 2 and 3 are overruled.

### *The Plurality Opinion in Autran v. State*

■ Appellant insists that this court should follow *Autran v. State*, 887 S.W.2d 31 (Tex.Cr.App.1994), and hold that the trial

court erred in overruling the motion to suppress the evidence secured in the warrantless search of the pickup and its contents. This would result in a reversal of the conviction for possession "with intent to deliver" more than one gram of methamphetamine. Appellant prays for an acquittal or, in the alternative, for a remand for trial on the lesser included offense of possession of more than one gram of methamphetamine.

The State argues that *Autran* is not a binding precedent. The State cites *Johnson v. State*, 912 S.W.2d 227, 233 (Tex.Cr. App.1995), which notes that in *Autran* the "plurality" believed there had to be an underlying intent for the two provisions (Article I, section 9 of the Texas Constitution as compared to the fourth amendment to the Constitution of the United States) to be different.[1] We agree with the Dallas and Texarkana Courts of Appeals that: "*Autran*, a three-judge plurality opinion, is not binding precedent." *Trujillo v. State*, 952 S.W.2d 879, 881 (Tex.App.—Dallas 1997, no pet'n); *Madison v. State*, 922 S.W.2d 610, 613 (Tex.App.—Texarkana 1996, pet'n ref'd); and *Hatcher v. State*, 916 S.W.2d 643, 645 (Tex.App.—Texarkana 1996, pet'n ref'd). We note that the Fort Worth Court of Appeals followed the plurality opinion in *Autran*. See *State v. Lawson*, 886 S.W.2d 554, 556 (Tex.App.—Fort Worth 1994, pet'n ref'd).

■ We also agree with the holding in *Trujillo v. State*, supra at 882, that "article one, section nine does not provide greater protection from inventory searches than does the Fourth Amendment." There is no showing in this case that the warrantless search was a "ruse for a general rummaging to discover incriminating evidence." We agree with the trial court that the inventory search of the pickup and its contents did not violate appellant's rights under the fourth amendment[2] nor did the inventory search violate his rights under Article I, section 9 of the Texas Constitution. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Trujillo v. State*, supra. Consequently, Points of Error Nos. 4 through 7 and 8 through 11 are overruled.

### Inventory of Pickup

■ Appellant argues in Point of Error No. 12 that there is no evidence that the Wood County Sheriff's Department possesses permissible policies for conducting inventory searches of vehicles and their contents "with the result that the State has failed to establish an element ... necessary to introduce evidence seized following an inventory search." We note that this was not one of the grounds urged in the motion to suppress evidence. That motion sought to suppress the evidence on the following grounds:

In support of this Motion to Suppress, Defendant would show that the evidence was seized as the result of *an illegal detention* in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Texas Constitution, Articles 1.04, 1.05, 1.06, and 38.23 of the Texas Code of Criminal Procedure. In this regard Defendant would show the Court the following:

1. The arrest of Defendant was made without a warrant and without probable cause.

2. All statements made by Defendant, if any, were the product of an illegal arrest, search and seizure.

3. The search and seizure were made without probable cause. (Emphasis added)

Appellant did not object on the ground that there was a lack of proof as to the necessary elements for a valid inventory search of the vehicle which was being impounded. Deputy Henson had testified that he and the other officer "began an inventory of the vehicle prior to releasing [it] to the wrecker company for impounding." The proof already showed that the only two occu-

---

1. The plurality opinion in *Johnson v. State,* supra at 233, noted in Footnote 6: "We do not believe a quest for 'independent meaning' should be the guiding light for each effort by a reviewing court in its analysis of the Texas Constitution."

2. U.S. CONST. amendment IV.

pants of the pickup had been arrested and placed in the deputy's vehicle and that it was after two o'clock in the early morning on a rural farm-to-market road. Deputy Henson had also testified that they released the pickup to the driver of the wrecker and that the wrecker driver "normally signs an impound sheet with the contents listed on there that we have left in the vehicle." In the absence of cross-examination or voir dire proof as to the department's inventory policy, and in the absence of an objection urging the absence of that proof, the trial court did not err in overruling the motion to suppress evidence. Point of Error No. 12 is overruled.

### Hearing on Motion to Suppress

Appellant argues in his final point of error that the trial court erred in refusing to hear the motion to suppress evidence outside the presence of the jury. The trial court ruled that this was not necessary. The trial court did not want to hear the same proof twice.[3] Since the motion was properly overruled, there is no reversible error. Point of Error No. 13 is overruled.

The judgment of the trial court is affirmed.

---

**3.** The trial court indicated that it would be a "short trial" if the motion were sustained, indicating that there would have either been an acquittal or a new trial without any illegally-obtained evidence.