11th Court of Appeals
Eastland, Texas
Opinion
 
Garry Allyn Diltz
            Appellant
Vs.                  No. 11-04-00078-CR -- Appeal from Taylor County 
State of Texas
            Appellee
 
            Garry Allyn Diltz pleaded no contest to possessing certain chemicals used to manufacture
methamphetamine. Prior to his plea, appellant filed a motion to suppress evidence. The trial court
denied the motion. The trial court assessed appellant’s punishment at five years confinement in the
Texas Department of Criminal Justice, Institutional Division. We affirm.
            On November 21, 2002, Officer David Watkins of the Abilene Police Department was
working in plain clothes for the Criminal Investigation Division; he was driving an unmarked police
car. As the officer was driving east on South 1st Street, he saw appellant drive abruptly onto the
shoulder of the roadway and “whip[] back” into the inside traffic lane. At this point, the officer
decided to follow appellant. At the corner of South 1st Street and Sayles, the officer saw appellant
approach the intersection too fast; he almost hit another motorist. As he continued on South 3rd
Street, appellant drove near the center of the roadway, “uncomfortably close” to the other lane. The
officer thought that appellant was intoxicated. At the corner of South 16th Street and Sycamore,
when appellant noticed that he was being followed, he stopped his vehicle in the middle of the road,
blocking the street. The officer got out of his car, walked to appellant’s vehicle, identified himself
as a police officer, and asked appellant to step out of the car. He also asked appellant if he had any
weapons on him. Appellant acknowledged that he did. The officer performed a pat-down search
of appellant and found three pocket knives in appellant’s pocket, one of which was a switchblade,
a prohibited weapon. Appellant was immediately arrested for possessing a prohibited weapon. 
            After Officer Watkins placed appellant under arrest, he and other police officers who had
arrived at the scene inventoried appellant’s vehicle. In a search of the trunk, they found a blue
suitcase that contained many items that Officer Watkins believed were precursors to “Nazi meth
labs,” including 8 cans of starter fluid that contained ether and 16 unopened boxes of allergy
decongestants that contained pseudoephedrine. The discovery of these items led to appellant’s
indictment for possession and transportation of ethyl ether with intent to unlawfully manufacture a
controlled substance, methamphetamine.
            In two points of error, appellant argues that the trial court erred in denying his motion to
suppress the evidence found in his vehicle because (1) his detention during the traffic stop
unlawfully extended beyond the purpose of the initial stop and (2) the evidence was obtained through
an unlawful inventory search. 
            A trial court’s denial of a motion to suppress is generally reviewed for abuse of discretion. 
Oles v. State, 993 S.W.2d 103, 106 (Tex.Cr.App.1999). In reviewing a trial court’s ruling on a
motion to suppress, appellate courts must give great deference to the trial court’s findings of
historical fact as long as the record supports the findings. Guzman v. State, 955 S.W.2d 85, 89
(Tex.Cr.App.1997). We must afford the same amount of deference to the trial court’s rulings on
“mixed questions of law and fact” if the resolution of those ultimate questions turns on an evaluation
of witness credibility and demeanor. Guzman v. State, supra. Appellate courts, however, review
de novo “mixed questions of law and fact” not falling within the previous category. Guzman v.
State, supra. We must view the record in the light most favorable to the trial court’s ruling and
sustain the trial court’s ruling if it is reasonably correct on any theory of law applicable to the case. 
Guzman v. State, supra.           
            In his first point of error, appellant asserts that his detention by the officer unlawfully
extended beyond the purpose of the initial stop. We disagree.
            When he approached appellant, the officer realized immediately that appellant was not
intoxicated. Instead, appellant appeared to be tired. Appellant was “constantly yawning and could
barely hold his eyes open.” Relying on Davis v. State, 947 S.W.2d 240 (Tex.Cr.App.1997),
appellant contends that, as soon as the officer determined appellant was not intoxicated, the detention
should have ended. In Davis, the Court of Criminal Appeals held that, once the reason for a traffic
stop has been satisfied, the stop may not be used as a “fishing expedition” for unrelated criminal
activity. Davis v. State, supra. at 243. We do not believe, however, that the officer’s actions in this
case constitute a “fishing expedition” for unrelated criminal activity. 
            We first note that this was not a routine traffic stop. The officer testified that he did not
actually stop appellant. Because the officer was driving without his red emergency light in an
unmarked vehicle, making a traffic stop would have been “abnormal” for him. Instead of stopping
appellant on his own, the officer wanted to follow appellant and watch him until he could get a
marked patrol unit to stop appellant. Before a marked patrol unit could arrive, appellant, on his own
initiative, stopped his car in the middle of the road after he noticed that he was being followed. 
Because the officer was driving in an unmarked vehicle in plain clothes and without his emergency
light, appellant had no way of knowing that he was being followed by a police officer until after the
officer got out of his car, approached appellant, and showed him his badge.
            We also note that in this case, unlike Davis, the officer’s purpose in detaining appellant was
not merely to determine if appellant was intoxicated. In this case, the officer detained appellant for
failing to drive in a single lane of traffic. See TEX. TRANSP. CODE ANN. § 545.060(a) (Vernon
1999). When the officer determined that appellant was not intoxicated, this determination did not
complete the purpose of the stop. 
            In traffic stop situations, the officer may perform certain activities that are incident to the
stop, including demanding identification, a valid driver’s license, proof of insurance, and checking
for outstanding warrants. See Davis v. State, supra at 245 n.6. In Davis, the officers went beyond
these activities and continued to detain the suspect after identifying him, running a background
check, asking twice for consent to search his vehicle, and calling in a canine unit to sniff the vehicle
for drugs. Davis v. State, supra at 241. 
            In this case, appellant’s detention prior to his arrest was brief and distinguishable from the
detention in Davis. When the officer first contacted appellant, he asked appellant to step out of the
car. Once a motor vehicle has been lawfully detained for a traffic violation, police officers may order
the driver to get out of the vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). Next, the
officer asked appellant “if he had any weapons on him.” Because of the inordinate risk confronting
police officers when they approach people in automobiles, we believe such a question is related to
officer safety and is, therefore, permissible. See Pennsylvania v. Mimms, supra. at 110. Appellant
acknowledged that he had weapons.
            The officer performed a pat-down search on appellant. The purpose of a pat-down search
is officer safety. O’Hara v. State, 27 S.W.3d 548, 555 (Tex.Cr.App.2000). A pat-down search is
substantially less intrusive than a standard search requiring probable cause. O’Hara v. State, supra.
at 550-51. Such searches will be justified only where the officer can point to specific and articulable
facts which reasonably lead him to conclude that the suspect might possess a weapon. See
Carmouche v. State, 10 S.W.3d 323, 329 (Tex.Cr.App.2000). Appellant’s admission that he had
weapons was a fact sufficiently specific to justify the pat-down search. 
            Once the officer discovered that appellant was carrying a prohibited weapon, appellant was
immediately placed under arrest for possession of a prohibited weapon. There was no prolonged and
unnecessary period of detention prior to appellant’s arrest as there was in Davis.
            Appellant also asserts that this case is similar to the traffic stop in United States v. Valadez,
267 F.3d 395 (5th Cir. 2001). In that case, the suspect was stopped for appearing to have an expired
vehicle registration sticker on his front windshield and illegal window tinting on other windows. 
United States v. Valadez, supra at 396. Upon stopping the suspect, however, the officer realized that
the registration sticker was valid and that the window tinting was proper. United States v. Valadez,
supra. Nevertheless, the officer continued to detain the suspect. United States v. Valadez, supra. 
The Fifth Circuit held that, once the officer determined that the suspect had a proper registration
sticker and proper window tinting, further detention was not lawful. United States v. Valadez, supra
at 398. 
            We believe this case, however, is distinguishable. In Valadez, the officer continued to detain
the suspect after the purpose of the traffic stop was complete. United States v. Valadez, supra. In
this case, as we have already explained, the purpose of the traffic stop was not complete when the
officer determined that appellant was not intoxicated. We overrule appellant’s first point of error. 
            In his second point of error, appellant asserts that the evidence of his criminal activity was
obtained following an unlawful inventory search. We disagree. 
            An inventory search is constitutionally permissible as long as it is not a “ruse for a general
rummaging in order to discover incriminating evidence.” Florida v. Wells, 495 U.S. 1, 4 (1990). 
Inventories conducted pursuant to standard police procedures are considered reasonable under the
Fourth Amendment. See South Dakota v. Opperman, 428 U.S. 364, 372 (1976). During an
inventory search, police may open closed containers so long as they do so in accordance with
standardized procedures. Colorado v. Bertine, 479 U.S. 367, 376 (1987)(Blackmun, J., concurring);
see also Wells v. State, 968 S.W.2d 483, 486 (Tex.App. - Eastland 1998, pet’n ref’d), cert. den’d,
526 U.S. 1021 (1999) (holding that the Texas Constitution does not provide greater protection from
inventory searches than does the Fourth Amendment of the United States Constitution). 
            We find that the inventory search of appellant’s vehicle was performed in accordance with
standard police department policy. The officer testified that the police department has a written
inventory policy. The officer also testified that, pursuant to police department policy, a wrecker was
called prior to the inventory search. The officer further testified that the inventory search was not
begun until after appellant was placed under arrest. There is no evidence in the record that the
department’s standardized procedures were not followed. There is also no evidence in the record
to support appellant’s contention that the inventory search was a “mere pretext for investigation.” 
We overrule appellant’s second point of error.
            The judgment of the trial court is affirmed. 
 
                                                                                    JIM R. WRIGHT
                                                                                    JUSTICE
 
July 28, 2005
Publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.